UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22 -mj-3273-DAMIAN

UNITED STATES OF AMERICA,

vs.

AARON THOMAS MITCHELL,

      Defendant.

_____/

## BRIEF IN SUPPORT OF GOVERNMENT'S MOTION FOR DETENTION

### Introduction

  The United States of America hereby moves for the Court to order the pretrial detention of defendant Aaron Mitchell.  As set forth below, the defendant is charged with kidnapping a minor in violation of Title 18, United States Code, Section 1201(a) & (g)(1), for events which took place in Sierra Vista and Douglas, in the District of Arizona.  On the morning of April 25, 2022, a 15-year-old female Minor Victim (M.V.) was waiting by her middle school when the defendant, then-employed as a Customs and Border Patrol Officer (CBPO), asked to see her documents, and then ordered her to get into his car, telling her he was going to take her to a police station. Instead, he handcuffed M.V. and drove her an hour away to his apartment where he repeatedly sexually assaulted her before driving her back to school several hours later.

  There is no combination of conditions that can reasonably assure the safety of the community or the defendant's appearance in this case.   Under § 3142(e)(3)(E), because he was charged with kidnapping a minor, it must be presumed that no condition or combination of conditions will

reasonably assure the safety of the community and the appearance of the defendant. Moreover, the defendant cannot overcome this presumption because all of the applicable 18 U.S.C. § 3142(g) factors weigh in favor of his detention. As set forth below, there is overwhelming evidence the defendant committed the brazen offense charged in the indictment, and if convicted, he faces a minimum of 20 years and up to lifetime imprisonment, which gives the defendant an incentive to flee. Moreover, the nature and circumstances of his offense demonstrate a danger to the community. He should be detained pending trial.

I. **Factual Background**

    A. <u>M.V.'s Account</u>

M.V., 5'3" and 94 pounds, lives in Mexico with her family. She was born in the United States and crosses the border by foot to attend school in Douglas, Arizona. According to M.V., on April 25, 2022, she was waiting for school to start when the defendant, garbed in a vest emblazoned with "police," drove up to her and rolled down his window. He told her he was a police officer and asked to see her documents. After she showed him her birth certificate, he asked for her backpack, which he looked through and placed on the seat. He then ordered her to get into his car so he could transport her to a police station.

When they were almost out of Douglas, he pulled over and handcuffed her and restrained her legs. He then drove her over an hour away to Sierra Vista, where he lives. During the drive, he asked her age, in response to which she told him she was 15 years old. He also asked about her family, including their names. When they got to his apartment, he told her not to make any noise and made her stay in the car. He went into his apartment to get a jacket. He removed the handcuffs from her legs so that she could walk, and draped the jacket over her shoulders, covering her handcuffs.

When they got inside, he took M.V. into his bedroom and turned on the television. He showed her his badge and told her not to be afraid because he was a police officer. He put a mask over her mouth and a t-shirt over the mask. He told her to "do everything" he said if she did not want to get hurt. Over the next several hours, Mitchell repeatedly and forcibly penetrated M.V. and had her masturbate him. At various times she was handcuffed, gagged and blindfolded. At one point, Mitchell had the victim on her knees with a cover over her face and he placed his hands around her neck and began squeezing "hard." She started crying and thought she "wasn't going to make it home."

After telling the victim he was not going to return her backpack because it had his fingerprints on it, the defendant drove M.V. back to Douglas and dropped her off near her school. During the drive, he told her he was a police officer in Sierra Vista. When he dropped her off by her school, she immediately outcried to her friends and family, and reported the events to police the same day.

B. <u>Corroborating Evidence</u>

There is overwhelming evidence corroborating M.V.'s account, the most salient of which are: (1) medical examinations; (2) video evidence supporting M.V.'s account (and contradicting the defendant's account); and (3) a screenshot of the defendant's phone search.

1. <u>Medical evidence</u>

A SANE exam was started just after midnight, the day after the assault. The medical examiner found possible blood in M.V.'s underwear and signs of vaginal trauma. M.V. had a follow-up visit on May 10, 2022, and a medical examiner found evidence of anal trauma. DNA results are pending.

2. <u>Defendant's statement and Video evidence</u>

The defendant was taken into police custody the day after the incident, and he gave a voluntary statement. According to the defendant, on the day of the incident, while in Douglas to look at real estate, he saw M.V. whom he recalled from border crossing and claimed he knew, although he was not certain of her name. He claimed he asked her if she wanted to skip school and hang out, and she said yes. He admitted that he took her to his apartment, but claimed they only watched television. He denied handcuffing her or having any sexual relations with her.

Video evidence, however, directly contradicts his account and corroborates M.V.'s account. For example, the defendant was specifically asked whether, when they got to his apartment, they got out together or whether she stayed in the car for "a little while." (According to M.V., he made her wait in the car while he got a jacket to cover her handcuffs.). The defendant claimed they got out together. Video from his apartment complex, however, shows that after he parked, the defendant went into his apartment alone and returned to his car, carrying what appears to be a jacket. After opening various car doors, he made a second trip to his apartment, before returning to the car and opening the front passenger car door. When M.V. finally gets out of his car, she appears to have a jacket slung over her shoulders.

The defendant was also asked about M.V.'s backpack. (M.V. said he told her he would not return it because it had her fingerprints.) The defendant claimed he did not know where her backpack was and denied getting rid of it. However, video evidence shows the defendant walk towards a dumpster with a backpack across his shoulder, throw something in the dumpster, and then walk back towards his apartment with no backpack. *See* Figs. 1 and 2.

 

**Fig. 1 and 2:** The left screenshot captures the defendant with a backpack on his way to the dumpster, while the right screenshot captures him without a backpack, on the way back from the dumpster.

3. Arrest and Phone Search

On the night he was arrested, officers were at the defendant's apartment complex preparing to execute a search warrant. Seeing police vehicles in the parking lot of his complex as he returned home at approximately 10:30 p.m., the defendant accelerated and drove past his apartment. After being stopped by police and detained, officers seized his phone. Analysis of the phone revealed the following search on his phone internet browser in "private" mode: "girl kidnapped rape doug." *See.* Fig.3. At the time, there had been no news media regarding this incident, and officers had not yet interviewed him about his interaction with M.V.

When asked why he had chosen to pass his apartment complex after seeing the police vehicles that night, the defendant had no answer.



**Fig. 3**: Screenshot of the defendant's phone browser as it existed when he was taken into custody, prior to being interviewed.

## II.     Legal Standard

The Bail Reform Act empowers federal courts to order a defendant's detention pending trial where the government establishes by clear and convincing evidence that the defendant is a danger to the community or, by a preponderance of the evidence, that he represents a risk of flight.  18 U.S.C. § 3142(e).  Where, as here, there is probable cause to believe that an individual kidnapped a minor in violation of 18 U.S.C. 1201(a) & (g)(1), it must be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community.  18 U.S.C. § 3142(e)(3)(A).  *See also United States v. Hurtado*, 779 F.2d 1467, 1479 (11th Cir.1985) (noting that a grand jury indictment provides the probable cause required by the statute to trigger the presumption.). Where a presumption of detention is applicable, the defendant bears the burden of production to rebut that presumption by coming forward with evidence to rebut the presumption.   The defendant's "obligation to come forward with evidence does not shift to the defendant the government's burden of persuasion." *United v. Quartermaine*, 913 F.3d 910, 916 (11th Cir. 1990).

Even if a defendant can meet his burden to rebut this presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight, "the rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weigh[ed] along with other evidence relevant to factors listed in section 3142(g)" *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988) (internal citations and quotations omitted).

The government's burden of proof on dangerousness is clear and convincing evidence. *Quartermaine*, 913 F.3d at 917. The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Millan*, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

The government's burden of proof on flight risk is preponderance of the evidence. *King*, 849 F.2d at 489 (citing *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985). Where the evidence of guilt is strong, it provides "a considerable incentive to flee." *Millan*, 4 F.3d at 1046; *see also United States v. Palmer-Contreras*, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased"). Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. *See United States v. Martir*, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee).

The Bail Reform Act lists four factors to be considered in the detention analysis, whether for risk of flight or dangerousness: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the

defendant's release; and (4) the evidence of the defendant's guilt.  18 U.S.C. § 3142(g); *see also Quartermaine*, 913 F.2d at 916.

### III. Argument

This defendant poses a significant danger to the community and is a flight risk if released pending trial, such that no condition or combination of bail conditions will reasonably ensure the safety of the community and the defendant's appearance before the court.  Because each of the § 3142(g) factors weigh in favor of the defendant's detention pending trial, the defendant cannot overcome the presumption that he be detained.

#### A.  Nature and Circumstances of the Offense

The nature and circumstances of the offense militate towards detaining the defendant. The defendant is charged with a brazen and serious crime: he abused his authority as a law enforcement officer, kidnapped a child who was waiting for school, drove her over an hour away to his apartment, and sexually assaulted her over the course of several hours.  During the sexual assault, the defendant, at various times, gagged, blindfolded, and choked M.V.  The defendant destroyed evidence (her backpack) and then cavalierly dropped her off at school after asking about her family members and warning her several times that he was a law enforcement officer.  The seriousness of his offense is reflected in the penalties he faces – a mandatory minimum of 20 years and a statutory maximum of life imprisonment.

#### B.  Strength of the Evidence and Risk of Flight

The overwhelming evidence that the defendant committed the charged offense and the associated likelihood of a lengthy sentence also weigh in favor of pre-trial detention.  The defendant has a powerful incentive to flee.  "When faced with the possibility of a significant prison term, defendants have a strong incentive to flee." *United States v. Edwards*, 2021 WL

796089, at *2 (E.D.N.Y. Mar. 2, 2021). *See also United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988) (defendant was a flight risk where she faced numerous mandatory minimum 10-year sentences); *United States v. Cisneros*, 328 F.3d 610, 618 (10th Cir. 2003) (the defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); and *United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee.").

Here, if convicted, the defendant faces a mandatory minimum of 20 years and a statutory maximum of life imprisonment. The government preliminarily estimates the defendant's guidelines range at life imprisonment. The possibility of a severe sentence—including a sentence lower than the one the defendant faces—can establish risk of flight. *See United States v. Scali*, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [the defendant]'s Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee.").

The defendant is also a flight risk because as a former CBP officer, the defendant received specialized training on how the United States maintains its border, and therefore is able to more easily flee to another country. He is not married and has no children.

Although the defendant has been on bond since May on the state charges, "as numerous courts have held, such initial cooperation by a defendant is by no means conclusive evidence of his future appearance." *United States v. Martin*, 2017 WL 4080689, *3 (S.D. Ga, September 14, 2017). In *Martin*, the court found the defendant was a flight risk despite the following: he had been released on state charges; he knew that federal charges were likely; he voluntarily appeared twice in state court; and he self-surrendered on federal charges. *Id*. at *1. The court found him

to be a flight risk because the defendant faced a minimum 10-year federal sentence, the possibility of mandatory life sentence, and after being federally charged, he knew the strength of the government's case. *Id*. at *3. *See also United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988) (the fact that defendant knew for six months that the grand jury indictment was imminent and chose to retain counsel and contest the charges rather than flee was not sufficient to overcome the statutory presumption of flight, as defendant faced minimum mandatory sentence and was aware of the government's damaging evidence against her, including a taped conversation.); and *United States v. Oliver*, 2016 WL 1746853 at * 9 (W.D. Pa. May 3, 2016) (finding that the defendant presented too great a risk of flight - and too great a danger - for pretrial release despite the fact that defendant was on bond for six weeks in state system and voluntarily surrendered to federal authorities, given that defendant faced a 10 year to life sentence,).

Similarly, here, although the defendant has not fled the past three months, this initial cooperation does not overcome the presumption that he is a flight risk. Like the defendants in *Martin*, *King*, and *Oliver*, the defendant has powerful incentive to flee given the fact that he newly faces a federal charge that carries 20 years to life sentence, and now knows the strength of the government's evidence.

      C.  <u>History and Characteristics of the Defendant</u>

The defendant does not have any criminal history, but his brazen conduct supports his detention. The defendant had been a CBP officer for less than a year when he kidnapped M.V. He abused his knowledge and training as a federal law enforcement officer when he targeted a vulnerable child who was waiting for school to start. He likely chose her because he knew she lived in Mexico and may be less likely to report him. He subtly threatened her by asking about her family members, and repeatedly told her he was an officer. He also directly threatened her by

telling her she had to do everything he said so he didn't have to hurt her. His blatant and gross abuse of his authority as a federal law enforcement officer militates in favor of his detention.

### D. Danger Posed by the Defendant's Release

Lastly, the defendant is a clear danger to the community. Because he faces a guidelines sentence of life and the evidence is strong, the defendant may decide he has nothing to lose by committing other crimes if he is released. And as the charged conduct demonstrates, the defendant, a trained federal law enforcement officer, is capable of tricking children into believing that they must accompany him as a police officer and abusing them once they are in his custody.

Moreover, the defendant has threatened to harm M.V. because of her report to the police. Officers left the defendant in the interview room after he gave a video-taped statement. While alone, the defendant muttered to himself: "I cannot believe this shit. Fucking little bitch. Bitch is claiming rape. That's so fucking crazy. That's crazy, man. **She better hope I don't get out of here**."

If the defendant is bold enough to kidnap and sexually assault a child who is waiting for school, cunning enough to dispose of evidence that would inculpate him, and careless enough to threaten to harm her when he knows he is being videotaped in a police station, there are no limits to what dangers he may pose to the community or to M.V. if he is released pending trial. Understandably, the victim and her family very much want the defendant to be detained.

Although the defendant has been released on bond on state charges since May, it does not overcome the presumption that the defendant be detained. Notably, the state court did not find that the defendant did not pose a danger to the community or posed no flight risk; rather, the defendant was released because the state stipulated to his release under conditions proposed by his attorney. Further, at the time of that hearing, neither the parties nor the court had all of the

evidence summarized above. More importantly, as mentioned above, federal courts have detained defendants even when they cooperated or had been on bond from state charges, finding that federal charges changed the calculus. And the calculus indeed has changed for the defendant here. He newly faces a 20-year mandatory minimum, while the state charges do not carry any statutory minimums. In addition, the defendant did not have discovery when he was released on bond on state charges and likely did not know the strength of the evidence against him.

IV. Conclusion

For the reasons set forth above, the government respectfully requests that the defendant be held without bail pending trial.

This brief for the United States is filed by the undersigned on behalf of Department of Justice Trial Attorney AeJean Cha, of the Civil Rights Division.

    Respectfully submitted,

    JUAN ANTONIO GONZALEZ
    UNITED STATES ATTORNEY

By:    /S/ FRANK H. TAMEN
    Assistant United States Attorney
    Florida Bar No. 261289
    99 NE 4th Street
    Miami, FL 33132
    (305) 961-9022

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 29, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

    Frank H. Tamen

    Asst. U.S. Attorney

_____
Assistant U.S. Attorney