UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 22-MJ-3273-DAMIAN

UNITED STATES OF AMERICA,
        Plaintiff,

v.

AARON THOMAS MITCHELL,
        Defendant.
_____/

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO GOVERNMENT'S MOTION FOR DETENTION

Mr. Mitchell has spent the last three months on a state bond. He has had no issues while on bond. He has not attempted to flee. He has not threatened anyone. He has not committed any acts of violence. He has not missed any court dates. He has not tried to contact the alleged victim or her family. He voluntarily surrendered to the FBI after he learned of his federal indictment.

Mr. Mitchell is not a flight risk or a danger and he should be released on a bond similar to the bond he received in Arizona.

### RELEVANT FACTS

Mr. Mitchell was arrested on April 26, 2022, in Sierra Vista, Arizona. At the time of his arrest, Mr. Mitchell had been employed by U.S. Border Patrol for approximately ten months. Before moving to Arizona to work for the Border Patrol, Mr. Mitchell was born and raised in Miami, Florida. He graduated from Miami-Dade College and worked at the Port of Miami as a terminal agent.

According to bond documents from Arizona and the Pretrial Services Report ("PTS Report"), Mr. Mitchell is facing eighteen counts in Cochise County Superior Court. (PTS Report at 2; Ex. A (Bond Receipt).) Felony sentences for defendants with no criminal history, like Mr. Mitchell, are based on a presumptive guideline and can be adjusted down to minimum or mitigated levels or up to maximum or aggravated levels. *See* Ariz. Rev. Stat. § 13-702. A preliminary calculation shows that Mr. Mitchell is facing a presumptive sentence of at least 25 years if the counts are run consecutive. *See id.* at §§ 13-1304, 1404, 1406, 1412, 2310, 2409, 3554; *see also id.* at § 13-711.

On May 4, 2022, Mr. Mitchell was arraigned in Superior Court in Cochise County. The court set a $200,000 10% bond with the following conditions: GPS monitoring; no contact with the victim or victim's family; must maintain contact with his attorney; must appear at all court appearances; and must obey all state, county, and federal laws. (Ex. B, Arraignment Minute Entry.) He was also required to remain in Arizona. The alleged victim and her victim advocate were present for the arraignment. (*Id.*) The arraignment and discussion of bond took approximately 45 minutes. (*Id.*) Mr. Mitchell's family posted $20,000 with a surety company the same day to satisfy the court-ordered bond and Mr. Mitchell was released.

On May 17, 2022, the Superior Court granted Mr. Mitchell's *unopposed* motion to modify the conditions of his release. (Ex. C.) The court permitted Mr. Mitchell to leave Arizona to live with his parents in Florida. Electronic monitoring remained in effect.

After the bond modification, Mr. Mitchell returned to Florida to live with his parents. His mother is a retired Miami-Dade Police Officer. His father is a retired Miami Beach Police Officer who started his law enforcement career working for the Bureau of Prisons in Miami.

On June 13, 2022, a pretrial conference was held in the Superior Court in Arizona. Mr. Mitchell appeared via Zoom with the court's permission.

On July 13, 2022, Mr. Mitchell was indicted in the District of Arizona. The indictment was sealed and an arrest warrant issued the next day.

On July 27, 2022, Mr. Mitchell voluntarily surrendered without incident at the FBI Miami Division office.

Mr. Mitchell never violated his bond while released.

## ARGUMENT

### I.  The Presumption under § 3142(e)(3)(E) is Easily Rebutted.

The presumption of detention under § 3142(e)(3)(E) is subject to rebuttal. The burden of production to rebut that presumption "is not a heavy one to meet." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986); *see, e.g.*, *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991). As the Government concedes, the burden of persuasion never shifts and remains with the Government. (Gov't Mot. at 6.) Once rebutted, "the presumption is just one factor among many." *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985), abrogated on other grounds by *United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990).

Turning to the § 3142(g) factors, Mr. Mitchell's history and characteristics alone rebut the presumption. He has no criminal history. (PTS Report at 2.) We know from the nature of his hiring by the U.S. Border Patrol that he has no history of drug or alcohol abuse and that he was subject to a Tier V background investigation, including a polygraph and SF-86 form.[1] Mr. Mitchell also has a supportive family here in Miami who he was residing with and who are willing to act as third-party custodians and co-signers, and provide him with a place to live while on bond. Mr. Mitchell has been on bond for the last three months and has not violated any conditions. He also voluntarily surrendered to federal authorities. *See United States v. Fiandor*, 874 F. Supp. 1358, 1361 (S.D. Fla. 1995) ("A defendant's voluntary surrender undoubtedly is probative of whether he or she presents a flight risk."). There is no reason to believe that if given a bond in this case, he will behave differently.

Even setting aside his family ties, family support, longtime residence in the community, lack of criminal history, and pristine record of appearance, and turning to § 3142(g)(4), there is no evidence that Mr. Mitchell is currently a danger to any person or the community. Again, he has done nothing while on his state bond to suggest that he is a danger to any person or to the community. Indeed, he has been living here in Miami as part of our community for the past several months without incident.

---

[1] *See* U.S. Customs and Border Protection, Applicant Resources, Suitability Overview, available at: https://www.cbp.gov/careers/car/suitability (last accessed July 30, 2022).

**II. Mr. Mitchell is Not a Danger or a Flight Risk.**

The Government has the burden to prove that no release condition can reasonably assure the defendant's appearance or the safety of the community.

If the weight of the evidence or the possible sentence were enough to mandate detention under the Bail Reform Act, Congress would have said as much.[2] But it didn't. The Government ignores the fact that Mr. Mitchell spent twelve weeks on bond and none of the parade of horribles cited by the Government have come to pass.

A. Risk of Flight.

The Government confuses the *incentive* to flee with the risk that a defendant will *act* or has the *means to act* on that incentive. First, the "incentive to flee" that the Government insists exists after the federal indictment also existed after Mr. Mitchell was arraigned and released from state court. Mr. Mitchell has had three months to "flee." He has not. The Government cannot point to any evidence beyond the new federal charge to support its argument that Mr. Mitchell is a serious flight risk.[3] In fact, Mr. Mitchell's behavior while on bond strongly suggests that any incentive to flee has been ameliorated by the $20,000 in collateral pledged by his

---

[2] The Government makes much of the 20-year mandatory minimum in this case. As stated in the Fact section, *supra*, Mr. Mitchell is facing a significant sentence in state court. In fact, the state charges cover a much broader array of alleged criminal behavior, including fraud, obstruction, and various sex crimes. Mr. Mitchell didn't flee after being arraigned on those very serious charges.

[3] The argument that because Mr. Mitchell was a border patrol officer for 10 months and he is therefore an expert on fleeing to a foreign country should be given no weight. The Government has proffered no evidence that Mr. Mitchell planned or plans to flee or has the financial resources to flee. Mr. Mitchell has had opportunities to flee by land in Arizona or by sea in Miami. He has done neither.

family on the state percentage bond. In this case, the Court is free to impose a similar financial condition, and/or require that one or both of Mr. Mitchell's parents act as third-party custodians.

The cases cited by the Government regarding flight are inapposite. The defendant in *Scali* was seeking a bond *pending sentencing* after pleading guilty to multiple felonies. 738 F. App'x 32, 33 (2d Cir. 2018) ("Having been found guilty of multiple felonies, Scali no longer has a substantive constitutional right to bail pending sentencing."). In asking the Court to ignore Mr. Mitchell's three months of compliance with his state bond, the Government cites *Martin*, a drug conspiracy case where there was strong evidence that the twice-convicted defendant "continues to possess the means, the ability, and the will to ship large quantities of marijuana across the United States and enrich himself in the process." 2017 WL 4080689, at *2 (S.D. Ga. Sept. 14, 2017). In other words, there was evidence of continuing criminal conduct. There is no evidence of that here. The Government's citations to *Oliver* and *King* fail for similar reasons. The court in *Oliver* found an unacceptable risk of flight because the record demonstrated that Mr. Oliver had "ready access to significant amounts of cash" and had traveled internationally in the recent past. 2016 WL 1746853, at *9 (W.D. Pa. May 3, 2016). In *King*, the defendant had "substantial drug connections outside the United States," "funds to finance flight" and no stable residence. 849 F.2d 485, 489 (11th Cir. 1988). Here, Mr. Mitchell is unemployed, will live with his parents, can be monitored, and, as evidenced by undersigned's representation, has no significant financial resources.

6

B. Dangerousness.

The arguments regarding dangerousness made by the Government fall into two categories: (1) generic arguments that ignore Mr. Mitchell's history and characteristics and could apply to anyone arrested for any serious crime and (2) arguments that require the Court to believe that Mr. Mitchell—if given a bond in federal court—is going to behave drastically different from how he behaved while on his state bond.

First, Mr. Mitchell has no criminal history. The Government cites (again) to the possible sentence in this case to support the argument that Mr. Mitchell "has nothing to lose" and will therefore commit other crimes if released. (Gov't Mot. at 11.) He committed no crimes before his arrest in this case and he has committed no crimes since being released on the state bond.

Next, the Government argues that a statement muttered *to himself* is evidence that Mr. Mitchell intends to harm the alleged victim. In context, it is clear that Mr. Mitchell is upset that M.V. has accused him of kidnapping and rape. It is "crazy" and he "cannot believe" it. There is no evidence that this was a genuine threat. In fact, Mr. Mitchell did "get out of here." He was released on a bond and was in Arizona for two weeks. He did nothing to M.V. or her family. Instead, he complied with the terms and conditions of his bond and stayed away from her—which is exactly what he would do here in Miami. And here, unlike in Arizona, he is 2,000 miles and one international border away from the alleged victim who resides in Mexico.

And finally, stipulated or not, the Superior Court and the state of Arizona

7

agreed that a bond was appropriate for Mr. Mitchell. The fact that it was not contested by the State or, according to the United States, questioned by the court, cuts against the Government—it was so obvious that Mr. Mitchell was neither a flight risk or a danger that the State agreed that he should be released.

### III. A Combination of Conditions Exist That Will Reasonably Assure Mr. Mitchell's Appearance and the Safety of the Alleged Victim and Community.

The following bond and special conditions will assure Mr. Mitchell's appearance and the safety of the alleged victim and community:

- A $250,000 personal surety bond co-signed by Thomasena Mitchell and Daniel Mitchell, Jr.

- Mr. Mitchell will: surrender all passports and travel documents, report to PTS as directed, avoid all contact with victim M.V. and her family, refrain from possessing a firearm, not visit any commercial transportation establishment.

- Mr. Mitchell will be subject to location monitoring. He will reside with his parents at their home in Miami Gardens.

- Thomasena Mitchell will agree to act as a third-party custodian.

- Neither Thomasena Mitchell or Daniel Mitchell, Jr. will sell, pledge, mortgage, encumber, etc. the real property they own in Miami Gardens.

- Mr. Mitchell may travel to and from the District of Arizona and the Southern District of Florida and must notify PTS of travel plans.

### CONCLUSION

The allegations against Mr. Mitchell are shocking and undoubtedly serious, but they remain allegations. A detention order predicated solely on the weight of the evidence would violate § 3142(j). Mr. Mitchell is presumed innocent. He has no criminal history, a stable and supportive family here in Miami, and a strong record

of compliance with his existing state bond. The Government cannot meet its burden and Mr. Mitchell should be released subject to a bond with conditions similar to his state bond.

Respectfully Submitted,

**MICHAEL CARUSO**
**FEDERAL PUBLIC DEFENDER**

By:
    *s/ Andrew S. Jacobs*
    Andrew S. Jacobs
    Assistant Federal Public Defender
    Florida Special Bar No. A5502687
    150 W. Flagler St., Ste. 1700
    Miami, FL 33130
    305-533-4201
    Andrew_Jacobs@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on **July 30, 2022**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via e-mail:

AUSA Carin Duryee (Carin.Duryee@usdoj.gov)

DOJ Trial Attorney AeJean Cha (AeJean.Cha@usdoj.gov)

By:    */s/ Andrew S. Jacobs*
       Andrew S. Jacobs

9